The petitioner, John Bigos, was a painter employed by the respondent, Waddill Skelly. At the time he sustained the accident for which a petition for compensation was filed, the respondent was engaged in painting a factory in Nutley, New Jersey. The day of the accident was cold and windy and the foreman in charge of the painters gave specific instructions against the use of ladders on that day. We reproduce the testimony in that regard:
"Q. And on this day in question when Mr. Bigos had this accident you were foreman in charge of painters? A. That's right.
"Q. What kind of a day was it? A. Very bad, very windy day, very cold. *Page 5 
"Q. And before the painters went to work that morning what, if any, orders did you give them? A. I gave them specific orders not to put any ladders on the building whatsoever at any time during the day.
"Q. Why? A. It was too windy to work off ladders.
"Q. What difference did it make to you whether it was windy or not? A. Well, after all, I am responsible for these men that work under me. I am responsible for their welfare.
"Q. What was the reason for not having any ladder work on that day? A. Wind at any time is apt to blow a man off the ladder.
"Q. That is what happened in this case, as far as you know? A. As far as I know.
"Q. Now, then, to whom did you give those orders? A. All the men as a unit, a group, and all the painters were there. I didn't pass the orders on until they were all there.
"Q. How many painters were there? A. Off-hand, at that time I would say I had about nine.
"Q. Of your own knowledge, do you or do you not know whether Mr. Bigos was there when the orders were given? A. Mr. Bigos was there, they were all there, or the orders would not have been given.
"Q. After the orders were given, as a matter of fact, where did Bigos, Kaplan and Wilson go to work? A. On this roof.
"Q. Did you see them there during the morning? A. Oh, yes.
"Q. Checked their work? A. I took them there.
"Q. You took them there. Did you know that Bigos had decided it was too cold on the roof and he came down and put up a ladder? A. No.
"Q. Did you give any orders to do that? A. Absolutely not.
"Q. Did you give him any permission to do that? A. No."
During the forenoon, petitioner with other employees was assigned to work on the roof of the building. After the noon day recess, he continued to work on the roof for a short time and then he undertook to paint the exterior of one of the windows from an 18 foot ladder. The wind blew the ladder away from the building and he fell, sustaining serious injuries. The Workmen's Compensation Bureau dismissed the petition and the Essex County Court affirmed, and this appeal is from the latter judgment.
The question for decision is a narrow one, i.e., did the disobedience of the orders of his superior remove the petitioner from the sphere of employment so that an accident sustained while performing the prohibited work is no longer an accident arising out of and in the course of the employment? The decisions in New Jersey have recognized a clear *Page 6 
distinction between the type of orders, disobedience of which will defeat a claim for compensation. In Kolaszynski v. Klie,91 N.J.L. 37 (Sup. Ct. 1917), compensation was awarded to a domestic servant who, in violation of express orders to the contrary, used wood alcohol to start a fire. The Supreme Court in affirming the Hudson County Court of Common Pleas said that "The disobedience of orders in this case was a disobedience of orders as to the way in which the work should be done. The work itself was the very work decedent was expected to do. It was done at the very place where it was meant to be done." On the other hand, there is a line of cases, among which are Reimers v. ProctorPublishing Co., 85 Id. 441 (Sup. Ct. 1914); Smith v.Corson, 87 Id. 118 (Sup. Ct. 1915), and Reis v. BreezeCorporation, Inc., 129 Id. 138 (Sup. Ct. 1942), holding that "disobedience of specific instructions limiting the sphere of thelocus of the employment has been held to take a resulting injury out of the application of the statute." In Smith v.Corson, supra, the deceased workman was expressly directed "to keep off scaffolds and not to do any climbing." The injuries which he sustained and which resulted in his death followed a fall from a scaffold and in reversing an award of compensation, the court said: "The decedent's presence on the scaffold was in direct disobedience of his master's orders. His mishap and death were directly due to his own disregard of his master's express orders. He was on the scaffold, not in the course of his employment but in direct violation of it, and therefore it cannot be said that the injuries which caused his death arose out of his employment." In Reimers v. Proctor Publishing Co., supra, the employee was using an automobile to deliver his employer's papers, but the undisputed testimony was that the president of the defendant corporation and his son had expressly forbidden the employee to use the car on the day of the happening of the accident. The court in that case reversed a judgment awarding compensation to the employee.
While the petitioner was performing work which he would ordinarily be expected to do, nevertheless when he undertook *Page 7 
to paint a part of the exterior of the building which necessitated the use of the ladder, he was performing work which was outside the sphere of the locus of his employment on that particular day. Implicit in the orders forbidding the use of a ladder was a prohibition against doing work on the exterior of the building under the then conditions which would necessarily require the use of a ladder to reach it.
The judgment under appeal is affirmed.